CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 16 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Buck
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 7:07CR00010 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| TONY MAJETTE, | ) | |
| | ) | By: Hon. James C. Turk |
| Defendant. | ) | Senior United States District Judge |

This case is before the Court on a Motion to Suppress by Defendant Tony Majette, ("Majette"), heard by this Court on November 8, 2007. Majette challenges the admissibility of evidence obtained pursuant to a vehicle search that was incident to his custodial arrest. After reviewing the evidence and the briefs submitted by the parties, the Court finds that Majette's Fourth Amendment rights were not violated.

I.

At approximately 5:30 p.m. on June 5, 2005, police officer M.P. Czernicki ("Czernicki") initiated a traffic stop of a silver Cadillac for what appeared to be illegally tinted windows. The Cadillac was driven by the defendant, Majette. Czernicki reported the vehicle's tag number to the Blacksburg police department and then approached Majette and asked for his driver's license and registration. Majette produced a Virginia identification card and advised Czernicki that his driver's license had been suspended. Czernicki returned to his patrol car and asked the Blacksburg Police Department's Communications Center to run Majette's driver's license and driver's transcript to determine the nature of Majette's license suspension.[1] The

---

[1] In the five to seven minute interim, Czernicki tested the Cadillac's window tint and confirmed that it was excessive, in violation of Virginia Code § 46.2-301(B).

Communications Center reported that Majette had approximately fifteen active license suspensions and three prior adult convictions for driving with a suspended license. Upon receiving this information, Czernicki placed Majette under arrest and seated him in the patrol car.

After securing Majette in the patrol car, Czernicki spoke with the passenger of the vehicle, Brandon Ore ("Ore"), and inquired as to whether he had a driver's license so that he could drive the vehicle. When advised by Ore that his license was at his apartment, Czernicki permitted Ore to call Nakeita Payne, the owner of the Cadillac, to pick up Ore so that he could retrieve his license. While Ore was away, Czernicki conducted a search of the Cadillac's passenger compartment. The search revealed a plastic baggie containing crack cocaine next to the passenger-side seat, between the seat and the door. The search also revealed a smaller baggie of crack cocaine behind the passenger's seat.

Majette filed a Motion to Suppress, in which he argues that the evidence of crack cocaine should be suppressed because it was obtained during a search that was incident to "a warrantless and unlawful arrest of defendant . . . in violation of the Fourth Amendment of the United States Constitution." (Def. Motion p.1).

## II.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, and effects, and against unreasonable searches and seizures." U.S. CONST. amend. IV. Fourth Amendment jurisprudence instructs that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so. See New York v. Belton, 453 U.S. 454, 457 (1981). The Supreme Court has recognized, however, that "the exigencies of the situation" may sometimes necessitate exemption from the warrant requirement. McDonald v.

United States, 335 U.S. 451, 456 (1948). Specifically, the Supreme Court held in Chimel v. California, 395 U.S. 752 (1969), that a custodial arrest creates a situation in which it is reasonable for the arresting officer to conduct a contemporaneous search of the person arrested and of the immediately surrounding area, in order to "remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape, and to prevent the concealment or destruction of evidence." Id. at 763.

The Supreme Court made its holding in Chimel a bright-line rule in United States v. Robinson, 414 U.S. 218 (1973). In Robinson, the Supreme Court held that a search incident to a lawful custodial arrest is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment," and rejected the suggestion that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." Id. at 235. In New York v. Belton, 453 U.S. 454 (1981), the Supreme Court applied its "search incident to arrest" jurisprudence to "the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." Id. at 459. In Belton, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at 460.

In the instant case, the evidence of crack cocaine was revealed when, incident to Majette's custodial arrest, Czernicki conducted a search of the Cadillac's passenger compartment. Accordingly, whether the evidence should be suppressed turns on the question of whether Majette was lawfully arrested.

3

## III.

Majette contends that he was unlawfully arrested. Specifically, he argues that Czernicki violated Virginia Code Section 19.2-74, which requires a police officer to issue a summons rather than an arrest warrant for any provision of the Code punishable as a Class 1 misdemeanor, when he arrested Majette for driving on a suspended license, a Class 1 misdemeanor under Virginia Code § 46.2-301(C).

Section 19.2-74 of the Virginia Code provides that

> [w]henever any person is detained by or is in the custody of an arresting officer for any violation committed in such officer's presence which offense is a violation of any county, city or town ordinance or of any provision of this Code punishable as a Class 1 or Class 2 misdemeanor or any other misdemeanor for which he may receive a jail sentence, except as otherwise provided in Title 46.2, or § 18.2-266, or an arrest on a warrant charging an offense for which a summons may be issued, and when specifically authorized by the judicial officer issuing the warrant, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82.
>
> Anything in this section to the contrary notwithstanding, if any person is believed by the arresting officer to be likely to disregard a summons issued under the provisions of this subsection, or if any person is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person, a magistrate or other issuing authority having jurisdiction shall proceed according to the provisions of § 19.2-82.

VA. CODE ANN. § 19.2-74(A)(1) (2004).

Accordingly, under the statute, an arrest for a Class 1 misdemeanor is permissible in the following circumstances: (1) the suspect's offense violated either Virginia Code Section 18.2-266 or a specifically exempted offense under Title 46.2; (2) the suspect fails or refuses to

4

discontinue the unlawful act; (3) the officer believed that the suspect would be likely to disregard a summons; or (4) the officer reasonably believed the suspect was likely to be a harm to himself or others. Virginia courts have held that "although the statute refers to predictive estimation of the accused person's future conduct, the standard for determining satisfaction of the statute is objective, whether evidence supports a reasonable belief that the statutory circumstances obtain." Fox v. Commonwealth, 598 S.E.2d 770 (Va. Ct. App. 2004).

The third exception to Virginia. Code § 19.2-74, requiring an officer to reasonably believe that the suspect would be likely to disregard a summons, was considered in Commonwealth v. Williams, No. 05-80, 2005 WL 1683546 (Va. Cir. Ct. July 19, 2005). In Williams, the Virginia Court of Appeals upheld the legality of a custodial arrest of the defendant for driving on a suspended license, after the arresting officer learned that the defendant had two previous convictions for the very same offense. The court found that the arresting officer reasonably believed that the defendant

> demonstrated clear contempt for previous admonitions of the court. The totality of the circumstances show that Defendant had repeatedly refused to cease this unlawful activity despite numerous past prohibitions, and support an objectively reasonable belief that he would be likely to disregard a summons by continuing to drive or failing to appear in court. This conclusion is bolstered by the fact that unlike the previous driving-on-suspended convictions, he would be required to serve jail time in this instance. See Va.Code § 46.2-301(C). Accordingly, Officer Bettinger appropriately exercised his statutory discretion and the arrest was not illegal under Code § 19.2-74(A)(1).

Id. at * 4.

In the instant case, the government argues that Majette's arrest was legal under the statute because Officer Czernicki reasonably believed that Majette would fail to appear in court and would continue to drive on a suspended license. (Gov. Brief at 3). After pulling Majette over for

5

suspected illegally tinted widows, Officer Czernicki learned not only that Majette was driving on a suspended license, but that Majette had three prior adult convictions for driving on a suspended license. At a hearing on Majette's Motion to Suppress, Czernicki testified that he believed Majette's record indicated a history of not following court orders and of continuing to defy court expectations. In considering whether to issue a summons or to arrest Majette for violating Virginia Code § 46.2-301, Driving While License, Permit, or Privilege to Drive Suspended or Revoked, he considered Section C of § 46.2-301, which provides that "[a] third or subsequent offense [of driving with a suspended license] occurring within a 10-year period shall include a mandatory minimum term of confinement in jail of 10 days." VA. CODE ANN. § 46.2-301(C). Czernicki testified that it is common practice of the Blacksburg Police Department to bring persons who have violated Section 46.2-301 on three or more occasions before the magistrate judge in custodial arrest for arraignment. Furthermore, Czernicki testified that after considering Majette's prior convictions, he had no reason to believe that Majette would voluntarily appear before the Magistrate Judge, if he were issued a summons.

As in Ross, Majette's prior convictions, coupled with the fact that Majette would be required to serve jail time for a fourth conviction of driving on a suspended license, see VA. CODE ANN. § 46.2-301(C), permitted Officer Czernicki to reasonably conclude that Majette would be likely to disregard a summons by continuing to drive or by failing to appear in court. Accordingly, the Court finds that Officer Czernicki "appropriately exercised his statutory discretion and that the arrest was not illegal under Code § 19.2-74(A)(1)." Williams, 2005 WL 1683546, at * 4. As discussed above, it follows that the search of the Cadillac was lawful, incident to Majette's valid arrest.

6

## IV.

For the reasons stated, the Court will deny Defendant's motion to dismiss. The Clerk is directed to send copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

**ENTER**: This __16th__ day of November, 2007.

                                  /s/ James C. Turk
                                  Judge James C. Turk
                                  Senior United States District Judge